**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **HENSEL PHELPS CONSTRUCTION CO.,** ) <br> 420 Sixth Avenue ) <br> Greeley, CO 80632 ) <br>  ) <br> **Plaintiff,** ) <br>  ) **Case No. 15-1961** <br> **v.** ) <br>  ) <br> **COOPER CARRY, INC.,** ) <br> 191 Peachtree Street, NE, Suite 2400 ) <br> Atlanta, GA 30303 ) <br>  ) <br> **Defendant.** ) <br>  ) | |

## COMPLAINT

COMES NOW Plaintiff, Hensel Phelps Construction Co. ("Hensel Phelps"), by and through its undersigned counsel, and brings this Complaint against Defendant, Cooper Carry, Inc. ("Cooper Carry" or "Architect" or "Defendant"), and states as follows:

## THE PARTIES

1. Hensel Phelps is organized under the laws of the state of Delaware with its principal place of business in Colorado.

2. Cooper Carry is a Georgia corporation with its principal place of business in Georgia. Cooper Carry provides architecture, planning, landscape architecture, interior design and environmental graphic design services.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees.

4. This Court has personal jurisdiction over Cooper Carry pursuant to D.C. Code Ann. § 13-423 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the acts and omissions that give rise to this action arise from services performed by Cooper Carry in the District of Columbia.  In addition, Cooper Carry has consented to personal jurisdiction in the District of Columbia by agreement.

5. Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in this District.

**GENERAL ALLEGATIONS**

6. On or about March 5, 2008, Marriott International, Inc. ("Marriott") as Owner, and Cooper Carry as Architect entered into the Agreement Between Marriott and Architect (Lump Sum Contract) (hereinafter, the "Design Contract"), whereby Cooper Carry agreed to be the lead designer and architect for an approximately 1175 room, four-star quality, full-service Marriott Marquis Hotel to be constructed on certain real property known as lot 26, square 70 located in Northwest Washington, D.C. and adjacent to the Washington Convention Center (hereinafter, the "Project").  A copy of the Design Contract is attached hereto as **Exhibit 1** and is incorporated by reference as if fully set forth herein.

7. On or about October 26, 2010, HQ Hotel, LLC ("HQ Hotel"), as the developer, and Hensel Phelps entered into the Design/Build Agreement for the Design, Construction, Furnishing and Delivery of the Project (hereinafter, the "Design-Build Contract").  Pursuant to its terms, the Design-Build Contract was for a Guaranteed Maximum Price ("GMP"), meaning that the cost to HQ Hotel under the Design-Build Contract would not exceed the GMP, exclusive of approved change orders.  A copy of the Design-Build Contract is attached

2

hereto as **Exhibit 2** and is incorporated by reference as if fully set forth herein. Cooper Carry is identified as the Architect of record for the Project in the Design-Build Contract. See Exhibit 2 (Design-Build Contract) at Section 5.1.

8. Pursuant to the terms of the Design Contract, the Design-Build Contract was expressly incorporated into the Design Contract upon execution of the Design-Build Contract. See Exhibit 1 (Design Contract) at Section 2.10.

9. On or about October 26, 2010, the same date the Design-Build Contract was executed, Marriott, HQ Hotel, and Hensel Phelps entered into the Assignment and Assumption Agreement & Termination of Pre-Development Agreement (hereinafter, the "Assignment"). A copy of the Assignment is attached hereto as **Exhibit 3** and is incorporated by reference as if fully set forth herein. Pursuant to the terms of the Assignment, Marriott assigned its ownership rights in the Project to HQ Hotel, and Marriott assigned all of its rights, title and interest in the Design Contract to Hensel Phelps. See Exhibit 3 (Assignment) at Section 2.

10. By virtue of the Assignment, any and all duties, obligations, and standards of care that Cooper Carry owed to Marriott under the Design Contract were assigned and transferred to Hensel Phelps, specifically including any performance and actions by Cooper Carry under the Design Contract that took place prior to the Assignment.

11. Section 2.01 of the Design Contract provides (in relevant part):

> The Architect shall faithfully and diligently perform all services enumerated in this Agreement (including all Exhibits hereto, which are hereby incorporated in this Agreement by reference) and those normally and customarily provided by an architect in the course of performing architectural services (collectively, the "Services") in accordance with the Standard of Care (hereinafter defined) and [Hensel Phelps'] written instructions. For purposes of this Agreement, the "Standard of Care" is defined as the professional standards of skill, care and diligence ordinarily

expected of leading, internationally recognized architectural firms on projects of comparable scope and complexity, and in recognition of the expertise and experience of the Architect in the design and construction contract administration of facilities similar to the Project…

See Exhibit 1 (Design Contract) at Section 2.01.

12. Section 2.05.1 of the Design Contract provides (in relevant part):

The Architect is knowledgeable of and will review all Federal, state, local laws, and foreign (if applicable) codes, ordinances, rules, regulations and other requirements imposed by governmental authorities having jurisdiction over the Project applicable to the design of the Project and the Services hereunder ("Applicable Laws").  In addition, the Architect represents that it is knowledgeable of all required governmental approval requirements….In addition, the Architect represents that it there is any conflict between the Applicable Laws, or conflict between any Applicable Laws and requirements imposed by the (sic) this Agreement, the more stringent requirement will control unless otherwise agreed to in writing by [Hensel Phelps].  In addition, the Architect represents and acknowledges that it is knowledgeable of National Fire Protection Association ("NFPA") Standards…The Architect shall incorporate into its work the requirements of the latest editions of the Marriott Design Modules, NFPA Standards…*Should the Architect negligently fail to comply with any Applicable Laws, the Architect shall bear all costs results (sic) from damages incurred by the Owner and [Hensel Phelps] on account thereof that are legally recoverable from the Architect.*

See Exhibit 1 (Design Contract) at Section 2.05.1 (emphasis added).

13. Section 2.09 of the Design Contract provides (in relevant part):

During all phases of the Project (including, but not limited to, the construction contract administration phase), the Architect shall coordinate the Services performed by the Architect with the Services performed by the Architect Consultants as well as the services of all Owner consultants and [Marriott].

See Exhibit 1 (Design Contract) at Section 2.09.

14. Exhibit A to the Design Contract is the Design Scope of Work and, amongst other things, required Cooper Carry to provide design and coordination to include fire protection, which included, the preparation of a "Fire Protection Analysis" that "shall include…required

building separation or exposure protection…", amongst other things. See Exhibit 1 (Design Contract) at Exhibit A §§ 1.I.1- 1.I.2.E.

15. Cooper Carry commenced its performance under the Design Contract shortly after it was executed in 2008, and continued its performance under the Design Contract, including preparation of the design for the Project, design revisions, and contract administration services until at least April 2014, when the Project was substantially complete.

16. In accordance with section 7.09 of the Design Contract, Hensel Phelps and Cooper Carry have engaged in pre-suit mediation regarding the subject matter of this Complaint, and the parties were unable to resolve their disputes.

17. Pursuant to section 7.10 of the Design Contract, the Design Contract "shall be interpreted, construed, applied and enforced in accordance with the laws of the jurisdiction in which the project is located," to wit, the District of Columbia.  See Exhibit 1 at Section 7.10.

18. Pursuant to section 7.10 of the Design Contract, "[a]ny action to enforce, arising out of, or related in any way to any provision of [the Design Contract] shall be brought and prosecuted in such court or courts located in the jurisdiction in which the project is located," to wit, the District of Columbia.  See Exhibit 1 at Section 7.10.

19. All conditions precedent to the bringing of this action have occurred or been waived.

## COUNT I
**(Breach of the Design Contract)**

20. Hensel Phelps incorporates by reference each and every allegation contained in Paragraphs 1 through 19 above as if fully set forth herein.

21. The Design Contract between Cooper Carry and Marriott is a valid, binding and enforceable contract.

5

22. Pursuant to section 7.01 of the Design Contract, "Marriott and the Architect each bind itself, its partners, successors, executors, administrators, and assigns of such other party, in respect to all covenants of this Agreement." See Exhibit 1 (Design Contract) at Section 7.01.

23. The Assignment is a valid, binding and enforceable contract. By virtue of the Assignment, Hensel Phelps acquired all of Marriott's rights, title and interest in the Design Contract. See Exhibit 3 (Assignment) at Section 2. As such, Hensel Phelps became the lawful counterparty to Cooper Carry to whom Cooper Carry owed its duties to perform under the Design Contract.

24. Cooper Carry materially breached the Design Contract by, *inter alia*:

   a. failing to meet the standard of care of an architect as prescribed by the Design Contract;

   b. failing to properly design below grade structures of the Project in accordance with applicable fire and life safety code requirements;

   c. failing to properly design the top-of-wall details for the guestroom demising walls;

   d. failing to properly design various components of the ductwork throughout the Project in a manner that complied with the applicable code requirements;

   e. failing to properly design a functional gutter and downspout system for the canopy systems located on the Project;

   f. failing to properly design the helix ramp and coordinate the design with the slurry wall;

g. issuing construction drawings that omitted doors or incorrectly identified the types of doors to be installed on Level 1 and to the exterior of the above grade structure of the Project;

h. failing to properly design stairwells in certain locations;

i. failing to properly coordinate door hardware throughout the Project;

j. failing to properly coordinate the ceiling design specifications with the drawings;

k. failing to properly identify the correct ceiling materials in various locations;

l. failing to properly design the smoke control system and coordinate that design with the required door control hardware needed to create a fully operational fire alarm and smoke control system;

m. failing to include primary and overflow scuppers for the majority of the roofs on the Project;

n. failing to properly design windows located above the PEPCO building in accordance with applicable codes;

o. failing to properly design the PUB coping;

p. failing to properly design the slab, rooms, and studs system and failing to coordinate these components;

q. failing to properly design the "wedge wall" to account for the possibility of water infiltration; and

r. failing to timely perform its obligations in a manner to support timely completion of construction.

25. As a direct and proximate result of Cooper Carry's breach of the Design Contract, Hensel Phelps has suffered damages in excess of $75,000.

**WHEREFORE**, Hensel Phelps respectfully requests this Court to enter judgment in its favor and against Cooper Carry, and award Hensel Phelps all damages, including additional overhead, markup for general and administrative expenses in accordance with section 14.1(f) of the Design-Build Contract, plus costs, expenses, attorneys' fees and any and all other amounts provided for in the Design Contract, plus pre-judgment and post-judgment interest and such other and further relief as this Court may deem just and proper.

### COUNT II
### (Indemnity)

26. Hensel Phelps incorporates by reference each and every allegation contained in Paragraphs 1 through 19 and 24 above as if fully set forth herein.

27. Section 6.01 of the Design Contract states (in relevant part):

> Indemnification: To the fullest extent permitted by law, the Architect shall indemnify, defend and hold the Owner and Marriott and its related entities, agents, employees and assigns (the "Marriott Indemnitees")… harmless, from and against any claim, judgment, lawsuit, damage, liability, and costs and expenses, including reasonable attorney's fees, as a result of, in connection with, or as a consequence of the Architect's performance of the Services under this Agreement ("Claims"), including, without limitation, any… (b) any Claims related to the negligent acts, errors or omissions of the Architect and the Architect Consultants in connection with the performance of Services on the Project; and (c) any Claims related to Architect's breach of this Agreement… The indemnification provision shall survive and continue beyond Final Payment and completion of the Project or any earlier termination of this Agreement.

> See Exhibit 1 (Design Contract) at Section 6.01.

28. By virtue of the Assignment, Hensel Phelps acquired all of Marriott's rights, title and interest in the Design Contract. See Exhibit 3 (Assignment) at Section 2. As assignee,

Hensel Phelps became the lawful beneficiary of Cooper Carry's indemnification under the Design Contract.

29.     Beginning in December 2013, Hensel Phelps incurred liability, damages, costs and expenses, including attorneys' fees, as a consequence of Cooper Carry's performance of its services under the Design Contract (as stated in paragraph 23 above), for which Hensel Phelps is entitled to be indemnified by Cooper Carry under section 6.01 of the Design Contract. Hensel Phelps has incurred damages in excess of $75,000, for which Cooper Carry must indemnify Hensel Phelps.

**WHEREFORE**, Hensel Phelps respectfully requests this Court to enter judgment against Defendant Cooper Carry and award damages, plus costs, expenses, attorneys' fees, and any and all other amounts, plus pre-judgment and post-judgment interest and such other and further relief as this Court may deem just and proper.

DATED:  November 5, 2015.

                                      Respectfully submitted,

                                      LAW OFFICES OF MARK. D. CRAWFORD, PLLC

                                      /s/ Mark D. Crawford
                                      Mark D. Crawford, Esq. (D.C. Bar 449004)
                                      2111 Wilson Blvd., Suite 700
                                      Arlington, VA 22201
                                      Phone: 703.351.5024
                                      Facsimile:  703.351.9292
                                      mcrawford@mdc-law.com